## SMITH v. HAMPTON.

### No. 2578.

Court of Civil Appeals of Texas. El Paso.

Oct. 8, 1931.

Johnson & White, of Fort Worth, and Hart Johnson, of Fort Stockton, for appellant.

T. M. Milam, of Fort Stockton, for appellee.

PELPHREY, C. J.

Appellant instituted this suit against appellee and for cause of action, omitting the formal parts of his petition, pleaded as follows:

"1. On or about the 10th day of February, 1930, C. S. Messinger, J. D. O'Mara and L. W. Osborne, were the owners of a commercial oil and gas lease and were then in possession of such lease, upon the following described land situated in Pecos County, Texas, to-wit: (Here follows a description of the leased premises.)

"And on such 10th day of February, 1930, said C. S. Messinger, et al., the owners of such lease, entered into a written contract with defendant John Hampton, which contract was dated February 10, 1930, and is recorded in Vol. 2, page 17, Contract Record of Pecos County, Texas, to which reference is hereby made, and which contract provided that defendant John Hampton should within 15 days from the date of such contract begin the drilling of a well for oil and gas upon the described lands, and should drill same to a depth of 1600 feet or to production at a lesser depth. Said contract further provided as follows:

" 'The party of the second part (defendant, John Hampton,) shall have an option to drill other wells on said land for the stipulated sum of $4.00 per foot so long as said lease pays for the expense of drilling same.'

"Said contract further provided that such lease owners, C. S. Messinger, et al, would execute and deliver to defendant, John Hampton an assignment to an undivided one-half interest in and to said lease upon the completion of said well to a depth of 1600 feet or to production at a lesser depth.

"Said contract further provided that said defendant John Hampton should have a lien upon all oil produced from said land to pay for his drilling of such wells thereon.

"2. Thereafter, to-wit: On or about the 15th day of February, 1930, defendant John Hampton came to this plaintiff at Grandfalls, Texas, and there explained to this plaintiff that he, the said John Hampton, had the contract above described and that he desired to rent from plaintiff a certain oil well drilling rig, to-wit: A Model H. Spudder, and all necessary tools, with which to drill the first well under the above described contract, and plaintiff and defendant then and there agreed that plaintiff should rent such rig and tools to defendant for and in consideration of the execution and delivery to plaintiff by defendant of an undivided one-sixteenth interest in and to said lease after the completion of said first well and the further consideration of the assignment by defendant of his right under the contract above described between C. S. Messinger et al, and defendant, to drill all other wells upon said lease at the rate of $4.00 per foot as therein provided, to this plaintiff, which last named consideration, plaintiff says is and was the chief consideration for such contract between plaintiff and defendant. It was further agreed to reduce such contract to writing and to sign same.

"3. After plaintiff and defendant had agreed upon the terms of their said contract, plaintiff had his attorney at Grandfalls, Texas, prepare the said contract as agreed upon in writing, a copy of which contract is attached hereto marked 'Exhibit A' and made a part and had same dated Feb. 19, 1930, (hereof as that was the date on which plaintiff expected defendant to return to Grand Falls to sign same.) On said 19th day of February, 1930, defendant did return to Grandfalls, Texas, but plaintiff having been called away on business, left said written contract with his wife to present to defendant. Plaintiff's wife did present said written contract to defendant and defendant then and there agreed that same was in proper form and represented the contract made by plaintiff and defendant, but did not then sign and execute same as plaintiff was away, but agreed to sign and execute same as soon as defendant had returned from Brown County, Texas, as hereinafter more fully alleged, with said rig and tools rented him by plaintiff.

"4. Thereafter, defendant went to Brown County, Texas, and hauled said rig and certain of said tools back to the above described leased lands in Pecos County, Texas. Plaintiff further alleges that defendant did not bring all of the tools from Brown County with said rig, which were there with it and which defendant was entitled to under his contract with plaintiff, but brought sufficient tools to satisfy himself and such as he desired.

"That on or about the 21st day of February, 1930, defendant brought said rig and tools to said lease and began drilling of a well thereon and that on or about the 21st day of May, 1930, defendant completed said well as a commercial producer.

"5. That on or about the 19th day of February, 1930, defendant had prepared a

certain contract in writing by his attorney, a copy of which is attached hereto, marked 'Exhibit B', and made part hereof, which provided in substance all of the provisions of the contract entered into by and between plaintiff and defendant as aforesaid, but which did not include the provision as to the assignment of the right to drill other wells upon said leased lands at $4.00 per foot, as had been agreed upon by plaintiff and defendant and that defendant brought a copy of said contract signed and acknowledged by himself to Grandfalls, Texas, on or about the said 19th day of February, 1930, and delivered same to plaintiff's wife, plaintiff not then being present as above alleged. Plaintiff's wife objected on plaintiff's behalf that said copy did not provide for the assignment of said right to drill other wells and defendant then and there stated to, and agreed with plaintiff's wife, acting for plaintiff, that he would have a supplementary contract prepared setting out such omitted provision as to the assignment of the right to drill said wells, which he agreed should have been in the contract he had prepared, and that he would then sign same with the plaintiff, or would sign the contract already prepared by plaintiff's attorney, when plaintiff returned, as well as the one he had already signed.

"6. Defendant, however, failed to sign said contract prepared by plaintiff or to have a supplemental contract drawn in accordance with their agreement and his promise, and after said well had been completed, then refused and has always since refused to sign same, and plaintiff desiring to protect himself in the premises as best he could and under the advice of his attorney, signed the said copy defendant had delivered to plaintiff's wife and placed same of record in Pecos County, Texas, same then and there being a part of the contract between these parties. Thereafter defendant mailed an assignment to a 1/16th undivided interest in said lease and thereby partly performed his said contract with plaintiff and plaintiff caused same to be recorded in Pecos County, Texas, but still insisted on the signing of the complete contract prepared by plaintiff and the assignment by defendant of the drilling right on said lease.

"Plaintiff further says that he has at all times been ready, able and willing to comply with the terms of his agreement with defendant and that he has in fact complied with said contract fully and has delivered and allowed defendant to use said rig and tools, which was his entire obligation and that defendant has complied partly with said contract by using said rig and tools and by delivering to plaintiff said assignment to a 1/16 interest in said lease, but that defendant has not fully complied with said contract by not signing said contract prepared by plaintiff as he agreed to do and by making no assignment to the right to drill said wells on said lease under said contract between Messinger, et al, and defendant.

"That plaintiff has always been since his agreement with defendant and is now in possession of sufficient rigs, tools and other machinery to drill and all wells upon said lease and is financially able to drill same, and that plaintiff is an experienced driller and contractor and has the ability to drill such wells properly, and that he is willing to comply with said contract with defendant in every way and has done so. Plaintiff further says that it was possible and that plaintiff was able to drill out said lease fully within one year from time said contract was made by and between plaintiff and defendant.

"Wherefore, plaintiff prays judgment of the court that defendant be decreed to specifically perform the contract between plaintiff and defendant and that he be decreed to sign and execute the said contract prepared by plaintiff and agreed to by defendant and that he be decreed to assign the right under the contract between Messinger, et al, to defendant to drill said wells at $4.00 per foot to this plaintiff, for all costs herein, and for such other and further relief, at law and in equity to which plaintiff may be justly entitled.

"And in the alternative plaintiff shows unto the court that it will require ten wells to completely drill out said lease, and that the cost of drilling such wells would be at the rate of $2.00 per foot, which would give this plaintiff a profit of $2.00 per foot on each of said wells; that the average depth of such wells is and would be 1600 feet and that the profit to plaintiff on each well would be $3200.00 and would be a total profit of $32,000.00, wherefore plaintiff prays in the alternative for judgment against defendant for $32,000.00 being the damages suffered by plaintiff by reason of defendant's refusal and failure to comply with his said contract with plaintiff, which plaintiff alleges is the amount of damages he has suffered, for costs of court and such other and further relief as plaintiff may be justly entitled to."

Appellee filed a general demurrer to the above petition which was by the court sustained. Appellant refused to amend and the court rendered judgment in favor of appellee. This appeal is prosecuted from such judgment.

### Opinion.

Appellant assigns error to the action of the Court in sustaining the demurrer, and presents the following propositions:

"(1) Recognized forms may be followed, but are not authoritative.

"(2) All pleadings are to be construed liberally, it being sufficient for a pleading to set

forth a full and clear statement of cause of action without ambiguity or contradiction, and a clear statement of relief sought.

"(3) The pleadings must allege facts relied upon with that certainty which will enable adverse party to understand and to meet them with proof.

"(4) Technical rules of pleading cannot be allowed to defeat the right substantially alleged."

Appellant argues that his pleading, when stripped of all its superfluity and separated from the evidence alleged, plainly sets forth a distinct cause of action, in that he is seeking to force appellee to specifically perform that portion of the oral agreement that was, by mistake or accident, omitted from the written contract, and in the alternative he is seeking damages for the failure of appellee to perform part of his agreement.

He refers to paragraph 5 of his petition, and contends that while it does not allege in exact words that a portion of the contract was omitted by mistake or accident, it is an allegation of fact which amounts to such an allegation, and it is not necessary that mistake or accident be set out by name or set out as a legal conclusion from such facts.

Appellee, on the other hand, argues that appellant's petition shows that an agreement was entered into between the parties; that that agreement was reduced to writing and signed by appellee, with that portion relative to the assignment of the drilling contract omitted; that appellant finally accepted the written agreement with that portion omitted; that such portion was intentionally omitted, and was executed by both parties with knowledge that such portion was not included, and therefore states no cause of action.

It is well established that, as between the parties thereto, a legally binding written instrument, which is unambiguous in its terms, cannot be varied, added to, or contradicted by proof of prior or contemporaneous agreements, in the absence of either fraud, accident, or mistake in its procurement, and this has been held to be a rule of substantive law, and not merely a rule of evidence. Rubrecht v. Powers, 1 Tex. Civ. App. 282, 21 S. W. 318; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Morrison Co. v. Riley (Tex. Civ. App.) 198 S. W. 1031; 1 Greenleaf on Evidence, § 275; 10 R. C. L. pp. 1017, 1018; 3 Jones on Evidence, §§ 434, 435; Wigmore on Evidence, pars. 2400, 2425, 2446. And in the case at bar, we find appellant alleging the execution of a written contract and attempting to add thereto an oral provision, without alleging that the execution thereof was procured either by fraud, accident, or mistake. His own allegations show that he was fully aware at the time he executed the written contract that the provision as to the drilling of other wells was not included; therefore, there could have been no mutual mistake as to that fact, and there was certainly no accident which brought about the omission.

It is true that he alleges appellee agreed to have a supplementary contract embodying such provision executed, and that this he failed and refused to do, but nowhere does he allege that appellee had no such intention, at the time the promise was made, that such representation was made for the purpose of and did induce appellant to execute the written contract, but he alleges that he executed it upon advice of counsel and for the purpose of protecting his rights.

Consequently, there is no such allegation of fraud as would entitle appellant to introduce evidence adding to the terms of the written contract.

We have concluded that the petition states no cause of action, and that the demurrer was properly sustained.

The judgment of the trial court is affirmed.